**SO ORDERED: September 14, 2006.**



_____
**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN RYAN HOGAN, | ) | Case No. 04-20643-JKC-7A |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| PAUL D. GRESK, as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 05-493 |
| | ) | |
| BARBARA J. HABIG, | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT AND ON THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ORDER SETTING HEARING THEREON

This matter came before the Court on Defendant Barbara J. Habig's ("Habig") Second Motion for Summary Judgment and on the Trustee's Partial Motion for Summary Judgment. Having reviewed the parties' respective submissions, the Court issues the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

The undisputed facts show the following:

1. On July 22, 2003, Stephen R. Hogan ("Debtor") purchased certain residential real estate commonly known as 1605 West 7th Street in Bloomington (the "Real Estate"), Indiana from Doris L. Hamm ("Hamm") pursuant to a Land Contract (the "Land Contract").

2. Under the Land Contract, Debtor agreed to pay Hamm $5,000.00 upon execution, to make monthly payments of $266.12 thereafter for 11 months, and to then pay a balloon payment of $39,859.80 on or before July 22, 2004.

3. The Land Contract required Hamm to deliver "full and complete possession" of the Real Estate to Hogan "on the day of execution of the contract" subject to Hamm being permitted to retain possession of a house located on the Real Estate "rent free until October 1, 2003."

4. The Land Contract was never recorded.

5. Debtor did not have sufficient funds available to make the balloon payment to Hamm on July 22, 2004.

6. To obtain such funds, Hogan applied for a mortgage loan from Argent Mortgage Company ("Argent"). Unable to secures these funds in time, Hogan Development, by Debtor, executed a Balloon Payment Promissory Note in the amount of $40,000 in favor of Habig (the "Note") on July 30, 2004.

7. As consideration for the Note, Debtor executed a mortgage (the "Mortgage") on the Real Estate in favor of Habig on July 30, 2004. The Mortgage, however, was neither acknowledged nor recorded on that day.

8. Also on July 30, 2004, Debtor gave Hamm a cashier's check drawn on Old National

Bank in the amount of $39,902.96.

9. Upon full payment, Hamm executed a Warranty Deed reflecting her transfer of legal title to Debtor on July 30, 2004. The Warranty Deed was acknowledged by a notary on July 30th, but apparently was not delivered to Debtor until on or about September 13, 2004.

10. Debtor recorded the Warranty Deed on September 13, 2004.

11. On September 16, 2004, Debtor and Habig re-executed the Mortgage. The Mortgage was then acknowledged by a notary and recorded that same day. In her acknowledgment, which was appended to the Mortgage, the notary erroneously stated that Debtor had appeared before her and executed a "Deed" rather than a "Mortgage."

12. On October 12, 2004, Debtor and his wife jointly borrowed $56,100 from Argent and granted Argent a mortgage on the Real Estate. The net loan proceeds of $42,411.92 were then deposited into Debtor's wife's individual bank account at Monroe Bank. The next day, she wrote a check from her account at Monroe Bank payable to Habig in the amount of $40,167.00 in satisfaction of the Note (the "Loan Payment").

13. On November 8, 2004, approximately two months after recordation of the Mortgage and approximately three weeks after satisfaction of the Note, Debtor filed a Chapter 7 bankruptcy petition.

**Conclusions of Law**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986)).

3.      With cross-motions for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in favor of the party against whom the motion under consideration is made.[1] *See O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001).

### 1.  Section 544(a)(3)

4.      In his Amended Complaint, the Trustee identifies two distinct transfers: Debtor's grant of the mortgage lien (the "Grant") in favor of Habig and the Loan Payment. The Amended

---

[1] While not styled as such, the Court views the Trustee's motion for partial summary judgment as a cross-motion. The Trustee's motion, however, addresses his claims under both 11 U.S.C. §§ 544(a)(3) and 547(b) while Habig's addresses only the § 547(b) claim. The Court further notes that the Trustee describes his summary judgment motion as being "partial." In the Court's opinion, however, the motion addresses all of the claims asserted by the Trustee in his Amended Complaint.

Complaint asserts, in part, that the Grant is avoidable under 11 U.S.C. § 544(a)(3).[2]

    5.    Section 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

\* \* \* \* \*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer.]

    6.    Here, the Trustee argues that the Grant is avoidable because the acknowledgment appended to the Mortgage when it was recorded on September 16, 2004, contained a fatal error in that it refers to a "Deed" rather than a "Mortgage."

    7.    Indiana Code § 32-21-2-3 provides that "[f]or a conveyance, a mortgage, or an instrument of writing to be recorded, it must be acknowledged by the grantor or proved before, among others, a notary.

    8.    There is no Indiana case dealing with this specific fact pattern. However, as explained in *Sufficiency of Certificate of Acknowledgment*, 29 ALR 919 § XIII (1924):

A mere misnomer of the instrument in the certificate will not invalidate, but will be treated as only a clerical error. *Dundas v. Hitchcock* (1851) 12 How. (U.S.) 256, 13 L. ed. 978; *Hurt v. McCartney* (1856) 18 Ill. 129; *Ives v. Kimball* (1849) 1 Mich. 308. Thus, the acknowledgment of "the foregoing mortgage," when in fact it was a deed, has been held good. *Ives v. Kimball* (Mich.) supra. And in *Hurt v. McCartney* (1856) 18 Ill. 129, it was held that the mere fact that the certificate of acknowledgment to a deed called it a "power of attorney" would not invalidate, where there was no doubt as to what instrument was actually acknowledged. Likewise, in *Dundas v. Hitchcock* (U.S.) supra, the acknowledgment of "the

---

[2] In response to the Trustee's § 544 argument, Habig insists that the Trustee's Amended Complaint does not include a claim under § 544. Contrary to that argument, the Amended Complaint contains two references to § 544. From a notice pleading standard, then, the Trustee has successfully stated a claim under § 544.

5

foregoing indenture," when the instrument was a deed poll, was said to be good, the court remarking that they should construe the instrument "ut res magis valeat."

9. In the absence of any Indiana case law on point, the Court concludes that the Mortgage's acknowledgment was not fatally flawed. Therefore, the Grant is not, as a matter of law, avoidable pursuant to § 544(a)(3), and the Trustee is not entitled to summary judgment on this claim.

**2. Section 547(b)**

10. In his Amended Complaint, the Trustee further claims that both the Grant and the Loan Payment are avoidable as preferences pursuant to 11 U.S.C. § 547(b).

11. Section 547(b) allows a trustee to avoid any transfer of an interest of the debtor in property (1) to or for the benefit of a creditor; (2) within 90 days of the filing of the bankruptcy petition; (3) for or on account of an antecedent debt; (4) while the debtor was insolvent; (5) that enables the creditor to receive more than he would have received in a bankruptcy liquidation in the absence of the transfer.

12. The power to avoid a preferential transfer is designed to further the Bankruptcy Code's central policy of equality of distribution. *See Begier v. IRA (In re American Int'l Airways, Inc.)*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)("[C]reditors of equal priority should receive pro rata shares of the debtor's property."). "Additionally, by preventing the debtor from favoring certain creditors over others and by ensuring an equal distribution, the preference provision helps reduce 'the incentive to rush to dismember a financially unstable debtor.'" *Warsco v. Preferred Technical Group (In re Presidential, Ltd.)*, 258 F.3d 557, 564 (7th Cir. 2001) (citations omitted). "The purpose of allowing preferential transfers to be set aside is to prevent debtors from playing favorites among their creditors, trying to keep alive a little longer by placating the most importunate ones." *Freedom Group, Inc. v. LePham-Hickey Steel Corp. (In re Freedom Group,*

*Inc.)*, 50 F.3d 408, 410 (7th Cir. 1995).

13.     The trustee bears the burden of establishing all the elements of § 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g); *Boberschmidt v. Society Nat'l Bank (In re Jones)*, 226 F.3d 917, 921 (7th Cir. 2000) (citations omitted).

14.     If the trustee meets his burden of proof under § 547(b), the case is over unless the defendant proves one or more of the affirmative defenses set forth in 11 U.S.C. § 547(c). *See Kellman v. P.S.E. & G (In re Jolly "N," Inc.)*, 122 B.R. 897, 902 (Bankr.D.N.J. 1991).

15.     Section 101(54) of the Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

16.     The Bankruptcy Code presumes the debtor to be insolvent, as a matter of law, during the 90 days prior to the petition date. 11 U.S.C. § 547(f). This presumption requires the defendant to present evidence to rebut the presumption, but it does not relieve the plaintiff of the ultimate burden of proof on this third element to establish a prima facie case under § 547(b). *See In re Taxman Clothing Co.*, 905 F.2d 166, 168 (7th Cir. 1990).

17.     Several of the elements of § 547(b) are not contested. Specifically, Habig has not rebutted § 547(f)'s presumption of insolvency. Nor is there any question that the Grant and Loan Payment were made to or for the benefit of Habig "on account of" Debtor's antecedent debt to her or that the Loan Payment was made within the 90-day preference period. Finally, there is no dispute that the Grant and Loan Payment allowed Habig to receive more than she would have otherwise received, in the absence of either transfer, in a Chapter 7 liquidation.

18. There is, however, a dispute as to when the Grant was "made" for purposes of § 547(b).

19. Section 547(e)(2) provides that a transfer is "made":

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B).
(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of–
    (i) the commencement of the case, or
    (ii) 30 days after such transfer takes effect between the transferor and the transferee.

20. Pursuant to § 547(e)(2)(B), the Trustee maintains that the Grant was "made" on September 16, 2004–the date the Mortgage was recorded. Under his logic, the Grant "took effect" between Debtor and Habig when the Mortgage was first executed on July 30, 2004, and that § 547(e)(2)(B) applies because the Mortgage was not recorded until September 16, 2004, well outside § 547(e)(2)(A)'s 10-day window.

21. Habig counters that the Grant "took effect" between she and Debtor on September 13, 2004–the date Hamm delivered the Warranty Deed to Debtor. By operation of § 547(e)(2)(A), Habig then reasons that the transfer was "made" on that same day because the Mortgage was recorded on September 16, 2004, i.e., within the § 547(e)(2)(A)'s 10-day window.

22. The parties' respective arguments are somewhat confusing in that they appear to combine two distinct issues, the first issue being whether the Grant was "made" within § 547(b)'s 90-day preference period and the second one being whether the "enabling loan" defense set forth in § 547(c)(3) applies.

23. The first issue is easily resolved. Under either parties' logic, the Grant falls within

§ 547(b)'s 90-day preference period in that the transfer was "made" either on September 13, 2004, at the earliest or on September 16, 2004, at the latest. Both of these dates fall within the preference period.

24. The real issue, then, is whether the enabling loan defense applies.

25. Section § 547(c)(3) states that the trustee may not avoid a transfer:

(3) that creates a security interest in property acquired by the debtor–
(A) to the extent such security interest secures new value that was–
   (i) given at or after the signing of the security agreement that contains a description of such property as collateral;
   (ii) given by or on behalf of the secured party under such agreement;
   (iii) given to enable the debtor to acquire such property; and
   (iv) in fact used by the debtor to acquire such property; and)
(B) that is perfected on or before 20 days after the debtor receives possession of such property.

Under § 547(g), Habig bears the burden of proving the applicability of § 547(c)(3).

26. The undisputed facts show that Debtor first obtained possession of the Real Estate when he executed the Land Contract on July 22, 2004. It would appear then that Habig's argument under § 547(c)(3) must fail because the Grant was not "perfected on or before 20 days after the debtor receives possession of such property."

27. Nevertheless, Habig contends that "possession" for purposes of § 547(c)(3) should not be defined by the date Debtor first took physical possession of the Real Estate but on the date he acquired title to the property, i.e., when Hamm delivered the Warranty Deed to him on September 13, 2004. The Court disagrees.

28. The court in *Logan v. Columbus Postal Employees Credit Union, Inc. (In re Trott)*, 91 B.R. 808 (Bankr.S.D.Ohio1988) faced a similar argument. In that case, the debtor purchased a vehicle with a loan obtained from a credit union that was then secured by a lien on the vehicle. In

9

defending the subsequent preference action, the credit union argued that "possession" for purposes of § 547(c)(3) should be defined by the date the debtor acquired the certificate of title for the vehicle, not on the date that the debtor first took possession of the vehicle. In rejecting that argument, the court explained:

> The Credit Union's argument is also analytically flawed: it is based upon the Credit Union's confusion of the concepts of possession and ownership. The Credit Union submits that these concepts are essentially synonymous. The Court disagrees. Although possession is not defined within the Bankruptcy Code, interpreting this term there is simply no reason for the Court to depart from the definition of the word possession which has gained acceptance through the law:
>> The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. Act or state of possessing. That condition of facts under which one can exercise his power over a corporeal thing at his pleasure at the exclusion of all other persons.
>
> Under the foregoing definition, it is readily apparent that one may exercise control or manual custody over property without having an ownership interest therein.

*Logan*, 91 B.R. at 811 (quoting Black's Law Dictionary 1047 (5th ed.1979)).

29. The Court agrees with this reasoning. If Congress intended § 547(c)(3)(B) to be geared toward ownership, it presumably would have used a different word than "possession." Accordingly, the "enabling loan" defense does not apply to the Grant.

30. In the absence of a meritorious defense, the undisputed facts show that the Trustee is entitled to judgment as a matter of law with respect to the Grant pursuant to § 547(b).

31. There is one further issue with the respect to the Loan Payment that, while not presented by the parties, must be examined. As stated in the Court's Findings of Fact:

> On October 12, 2004, Debtor and his wife jointly borrowed $56,100 from Argent and granted Argent a mortgage on the Real Estate. The net loan proceeds of $42,411.92 were then deposited into Debtor's wife's individual bank account at Monroe Bank. The next day, she wrote a check from her account at Monroe Bank payable to Habig

in the amount of $40,167.00 in satisfaction of the Note (the "Loan Payment").

32. In both his Amended Complaint and summary judgment motion, the Trustee glosses over the fact that Debtor's wife, and not the Debtor, made the Loan Payment to Habig. Arguably, then, it is the transfer of the loan proceeds from Debtor to his wife that actually depleted the bankruptcy estate. The Trustee, however, has not sought to avoid that transfer.

33. Based on the foregoing, the Court is reluctant to grant summary judgment pursuant to § 547(b) in favor of the Trustee with respect to the Loan Payment at this time.[3] Instead, the Court will conduct a hearing on October 5, 2006, 9:00 a.m. in Room 325, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana, to clarify the procedural and substantive issues presented by the Trustee's Amended Complaint and summary judgment motion. The Court will not enter a judgment consistent with these Findings and Conclusions until after this hearing

34. The Court further notes that while the Trustee seeks summary judgment in the form of a money judgment against Habig, he did not assert a separate claim under 11 U.S.C. § 550(a) in his Amended Complaint. Assuming he prevails in avoiding either the Loan Payment or, perhaps more correctly, the transfer from Debtor to his wife, he will either have to further amend his Complaint to add a count for § 550(a) against Habig or bring a separate action as contemplated by § 550(g).

###

Distribution:
Paul D. Gresk
Gary L. Hostetler
UST

---

[3] The Court notes that the analysis under § 547(b) for this transfer would, likely, be essentially the same as it is for the Loan Payment.